IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER WELCHKO, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 3:18-cv-226 ) Judge Stephanie L. Haines |
| UPMC ALTOONA and AFSCME COUNCIL 83 LOCAL 691, | ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Pending before the Court is a motion for summary judgment (ECF No. 31) filed by Defendant UPMC Altoona ("Defendant") on Plaintiff Jennifer Welchko's claim of gender discrimination under Title VII of the Civil Rights Act of 1964. In her complaint (ECF No. 1), Plaintiff Jennifer Welchko ("Plaintiff") alleges she was terminated by Defendant on the basis of her gender in violation of Title VII. In its motion for summary judgment (ECF No. 31), Defendant argues it is entitled to judgment in its favor because Plaintiff has failed to establish a *prima facie* case of gender discrimination under Title VII. For the reasons set forth herein, the Court will GRANT Defendant's motion for summary judgment (ECF No. 31) and enter judgment in Defendant's favor as to Plaintiff's claims.

I.  **Factual and Procedural Background**

In 2007, Plaintiff began working with Altoona Regional Hospital, which was later integrated into the UPMC system and renamed UPMC Altoona (ECF No. 32 at ¶1). In May, 2017, Plaintiff started the position as medical assistant on Unit 7e, UPMC Altoona's stroke unit. *Id.* at ¶2. Before taking that position, Plaintiff worked for Defendant in the previous ten years in different administrative jobs, primarily in the role of secretary (ECF No. 35 at ¶2). Plaintiff's duties as a

1

medical assistant included, among other duties, assisting patients with safety and comfort, adhering to instructions from team leaders or clinical managers and following established routines, and accurately entering information into the computer (ECF No. 32 at ¶7).

Approximately a week after Plaintiff began working as a medical assistant, Defendant represents Plaintiff attended several training sessions, including a session on the computer system Defendant used for patient charting (ECF No. 32 at ¶8). At her deposition, Plaintiff testified she only received an overview on this computer system, and the training did not include patient care (ECF No. 35 at ¶8). Regarding recording the patient care provided by Defendant's employees into a patient's chart, Defendant represents that its management regularly instructs employees that they may not enter any care activities the employees provide into a patient's medical records in the charting computer system before those activities actually happen, referring to that prohibited practice as "pre-charting" (ECF No. 32 at ¶12). Defendant has attached a declaration from its employee Kevin Pruznak,[1] Unit Director for Unit 7e, indicating that pre-charting is grounds for termination of employment (ECF No. 32-1 at p. 313). At her deposition, Plaintiff testified she understood she was supposed to chart patient care activities after she completed them, not before she completed them (ECF No. 32 at ¶13). She also testified that she never received any training on charting, though she had asked her supervisors, Kevin Pruznak and Michael Montler, for training on charting and explained to them she did not chart in her prior position as secretary (ECF No. 35 at ¶¶5, 8).

On September 9, 2017, Plaintiff placed bathing materials in a male patient's room because he said he wanted to wait for a bath until his wife came with a change of clothes, but Plaintiff

---

[1] Plaintiff was hired by Pruznak and reported to him in her job as medical assistant (ECF No. 32 at ¶¶3-4).

documented that the bath was completed without actually providing a bath to that patient (ECF No. 32 at ¶16). Following that incident, Plaintiff's supervisor, Michael Montler, spoke to Plaintiff about not pre-charting baths. *Id.* at ¶¶4, 17-18. Plaintiff testified that, after speaking with Montler, she was confused about what he told her and she again requested training on patient charting and the computer system, but instead of providing this training, Montler walked away and did not provide the requested training (ECF No. 35 at ¶18). Plaintiff contends she had asked both Pruznak and Montler for training on charting and explained to both that she did not chart in her prior position as secretary, but she did not receive training from them. *Id.* at ¶5.

On October 11, 2017, Plaintiff placed bathing materials in a female patient's room and then left because a nurse was in the room administering medications, and Plaintiff believed the nurse would then either bathe the patient or tell Plaintiff that the patient was ready to be bathed (ECF No. 32 at ¶20). Plaintiff originally charted the bath was completed, noting the patient was "bath independent," meaning the patient independently bathed herself. *Id.* at ¶¶21-22. Approximately one hour later, Plaintiff modified the chart entry from "bath independent" to "bath refused," adding a comment that the patient was not actually bathed because she was about to be discharged. *Id.* at ¶23. Plaintiff explained at her deposition she selected a box on the charting computer system for bath, but did not realize it would indicate Plaintiff herself had completed the task (ECF No. 35 at ¶21).

That same day, Plaintiff went into a prisoner patient's room to see if he needed a bath, but he was not alert and the prison guards informed Plaintiff he had already been bathed (ECF No. 32 at ¶¶24-25). Plaintiff then charted that the prisoner patient's bath was completed, without actually having bathed him or witnessed him being bathed. *Id.* at ¶26. Approximately one hour later, Plaintiff modified the prisoner patient's chart entry to state the guards told her he had already been

3

bathed during night shift. *Id*. at ¶27. As to this incident, Plaintiff testified she checked the box indicating the bath had been completed, again not realizing that by doing so, it would reflect that she had provided the bath (ECF No. 35 at ¶24).

When Plaintiff's supervisors, Pruznak and Montler, learned of the two October 11, 2017 pre-charting incidents, Defendant began an investigation into those incidents (ECF No. 32 at ¶28). Plaintiff was suspended pending further investigation of the pre-charting incidents. *Id*. at ¶29. On October 28, 2017, Defendant terminated Plaintiff's employment. *Id*. at ¶30.

Defendant describes Plaintiff created false records when she charted patients had been bathed when they were actually not bathed, and the falsification of records is grounds for discharge. *Id*. at ¶¶33-34. Plaintiff proceeded through a grievance process with her union, AFSCME 83, Local 691, to challenge her termination, but ultimately, the union withdrew the grievance. *Id*. at ¶¶35, 36, and 38. On June 27, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania's Human Relations Commission alleging sex discrimination. *Id*. at ¶41.

Plaintiff commenced this action on November 7, 2018, by filing a complaint (ECF No. 1) alleging a gender discrimination under Title VII of the Civil Rights Act of 1964 (Count I) and the Pennsylvania Human Relations Act ("PHRA") (Count II). Defendant filed an answer on January 28, 2019 (ECF No. 5). Plaintiff initially filed suit against Defendant and her union, AFSCME Council 83, Local 691, but on April 23, 2020, the Court approved the parties' stipulation to dismiss both claims in the complaint against AFSCME Council 83, Local 691, with prejudice, and to dismiss Count II from the complaint as to Defendant (ECF Nos. 44 and 45). Accordingly, Plaintiff's Title VII gender discrimination against Defendant is the only operative claim in this matter.

As part of her claim for gender discrimination, Plaintiff identifies Trent McConnell as a comparator male employee (ECF No. 32 at ¶44). Like Plaintiff, McConnell also worked on Unit 7e and reported to Pruznak. *Id.* at ¶46. In 2016, Defendant issued McConnell a written warning and suspended McConnell for pre-charting patient care, but McConnell later returned to work. *Id.* at ¶47. McConnell then engaged in another pre-charting incident and was discharged as a result. *Id.* McConnell's union, SEIU, pursued the issue to an arbitration, and Defendant states that, prior to the arbitration, counsel for Defendant agreed with counsel for SEIU to allow McConnell to return to work on a one-year probationary period. *Id.* at ¶¶48-49.

Defendant contends its decision makers treated Plaintiff and McConnell the same, with the only difference being McConnell's union pursued the issue to arbitration. *Id.* at ¶¶51-52. Plaintiff argues she was treated more harshly than McConnell, a male, as he first received a written warning and was thereby provided an opportunity to improve and receive training (ECF No. 35 at ¶52). Plaintiff states she received no discipline prior to being terminated, no training, and no warning that a charting infraction would result in termination. *Id.*

On February 18, 2020, Defendant filed a motion for summary judgment (ECF No. 31), concise statement of material facts (ECF No. 32), and brief in support of its motion for summary judgment (ECF No. 33). On March 18, 2020, Plaintiff filed her brief in opposition to Defendant's motion for summary judgment (ECF No. 34) and response to Defendant's statement of material facts in opposition to Defendant's motion for summary judgment (ECF No. 35), later filing her exhibits in support of her brief in opposition (ECF No. 37). Defendant filed a reply brief in support of its motion for summary judgment (ECF No. 36). The Court held oral argument in this matter on May 8, 2020 (ECF No. 46). The Court has considered all evidence filed of record, and the matter is fully briefed and ripe for disposition.

5

## II. Standard of Review

In relevant part, Rule 56 provides:

> A party may move for summary judgment, identifying each claim or defense...on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
> ...
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by...citing to particular parts of materials in the record...or...showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(a), (c).

After discovery and upon a motion, Rule 56 requires the entry of summary judgment against a party who "'fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could decide it in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322-23)). In deciding a Rule 56 summary judgment motion, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions,

admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

### III.   Jurisdiction and Venue

The Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3). Venue is proper under 28 U.S.C. § 1391(b).

### IV.   Analysis

Title VII renders it unlawful "for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In this case, Plaintiff alleges she was terminated by Defendant on the basis of her gender. Absent direct evidence of discrimination or retaliation, as here, Title VII discrimination and retaliation claims are analyzed according to the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973): (1) first, the plaintiff must establish a prima facie case of discrimination or retaliation; (2) then, the burden shifts to the employer to advance a legitimate, non-discriminatory or non-retaliatory reason for the adverse employment action; (3) and finally, the plaintiff is afforded an opportunity to show that the employer's proffered reason was a pretext for discrimination or retaliation. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006); *Kelly v. DeJoy*, Civil Action No. 19-204, 2021 U.S. Dist. LEXIS 44379, at *25 (W.D. Pa. Mar. 10, 2021).

   1. *Prima Facie* Case

To state a *prima facie* case of gender discrimination, a plaintiff must show the following:

1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination in that similarly situated male employees were treated more favorably. *Brown-Baumbach v. B&B Auto., Inc.*, 437 F. App'x 129, 134 (3d Cir. 2011) (internal citations omitted). For purposes of its motion for summary judgment, Defendant does not dispute Plaintiff has satisfied the first three elements of her *prima facie* case but argues Plaintiff has failed to show circumstances exist to give rise to unlawful discrimination.

To establish the fourth element, a plaintiff may either: "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between [her] membership in a protected class and the adverse employment action." *Drummer v. Hosp. of Univ. of Pennsylvania*, 455 F. Supp. 3d 160, 168 (E.D. Pa. 2020).

To satisfy this element, Plaintiff relies on comparator evidence of male employee Trent McConnell. The record shows McConnell and Plaintiff both were disciplined for pre-charting patient activities, but McConnell was ultimately allowed to continue his employment while Plaintiff was terminated. However, the intervening actions of McConnell's union created circumstances that differentiate the comparator analysis between Plaintiff and McConnell. It is undisputed that McConnell's union advanced his claim to an arbitration, and prior to the arbitration, counsel for his union and counsel for Defendant made the decision to reinstate his employment. Looking at the circumstances common to both Plaintiff and McConnell, the record shows Defendant treated them equally as they were disciplined and terminated on the same basis. Plaintiff's argument relating to McConnell is focused on McConnell receiving a written

warning regarding his first pre-charting incident while Plaintiff was only spoken to by her supervisor Montler about her first pre-charting incident. Plaintiff asserts Defendant applied its progressive disciplinary policy to male employee McConnell but did not do so with Plaintiff (ECF No. 35 at ¶52). Plaintiff alleges the written warning afforded McConnell an opportunity to improve his performance before Defendant decided to terminate his employment, while Plaintiff, a female, was terminated without the opportunity to improve. *Id.*

Defendant argues in its reply (ECF No. 36) that McConnell's written warning about pre-charting and Plaintiff being spoken to about her pre-charting by her supervisor is a distinction without a difference, and the Court agrees. Further, that Plaintiff received a *less* severe discipline than a male comparator for the same activity is not evidence of gender-based discrimination. There is no evidence in the record to support Plaintiff's insinuation that a written warning benefitted McConnell with opportunities for training and improvement. Moreover, Plaintiff's contention that a more severe warning would have appropriately alerted her to the possibility of termination is immaterial to her burden of proof to show she was discriminated against on the basis of her sex.

Plaintiff has not met her burden of making a *prima facie* case of gender discrimination because she has not shown circumstances exist that give rise to an inference of unlawful discrimination. However, even accepting Plaintiff's argument that McConnell's written warning shows he was treated more favorably than Plaintiff, the Court still would grant Defendant's motion for summary judgment because Defendant has met its burden of offering a legitimate, non-discriminatory reason for Plaintiff's termination, which Plaintiff has failed to rebut.

2. Legitimate, Non-discriminatory Reason for Plaintiff's Termination

At the second step of *McDonnell Douglas*, an employer's burden of production is relatively light and is satisfied by introducing evidence which, taken as true, would permit the conclusion

that there was a legitimate, non-discriminatory reason for the unfavorable employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The record shows Defendant prohibited pre-charting, based on the inaccuracies it creates in patient records, and Plaintiff was aware she was not to chart patient care activities before they were completed and was spoken to on one occasion after pre-charting. After Plaintiff again committed incidents of pre-charting, Plaintiff was terminated for pre-charting her patient care activities. The Court finds Defendant's basis for terminating Plaintiff is legitimate, shifting the burden to Plaintiff to show pretext.

3. Pretext

As Defendant has shown a legitimate, non-discriminatory reason for Plaintiff's termination, the burden then shifts back to Plaintiff to show pretext. To defeat summary judgment at the pretext stage, Plaintiff must point to some evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes,* 32 F.3d at 764 (3d Cir. 1994) (internal citations omitted). To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. *Id.* Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons." *Id.*

To show pretext, Plaintiff asserts she did not receive training on charting and her requests for training on charting were ignored or denied by her male supervisor (ECF No. 34 at p. 7).

10

Plaintiff also asserts she proffered reasonable explanations to her employer about why she pre-charted the patients, but these explanations were rejected. *Id.* This evidence may show Defendant could have provided additional training or could have been more understanding of Plaintiff's difficulties in her new role, but it does not create any issue of fact as to the credibility of Defendant's stated reason for terminating Plaintiff over her incorrect charting on patient records in violation of Defendant's standards for patient care.

A plaintiff still might demonstrate pretext under the second prong of *Fuentes* if she can demonstrate that discrimination "was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. Pretext can be shown this way by producing evidence that: 1) the employer previously has discriminated against the plaintiff; 2) the employer has discriminated against other persons; or 3) the employer has treated more favorably similarly situated employees outside of the plaintiff's protected class. *Id.* As to this prong, Plaintiff contends pretext is shown by Defendant skipping the progressive discipline plan with Plaintiff, a female, but applying it for the same infraction of a male employee, McConnell (ECF No. 34 at p. 7). As previously discussed, Plaintiff has failed to show how Plaintiff receiving a *less* severe discipline than a male comparator for the same prohibited activity is evidence of gender based discrimination.

To survive summary judgment, Plaintiff must point to evidence from which a factfinder may reasonably have disbelieved Defendant's reason for its termination of Plaintiff. Plaintiff has failed to offer evidence to show her termination was based on her gender, and Defendant is entitled to judgment in its favor.

## V.  Conclusion

For the reasons stated herein, the Court will GRANT Defendant's motion for summary judgment (ECF No. 31) and enter judgment in Defendant's favor.

An appropriate Order will follow.

_____<br>
Stephanie L. Haines<br>
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER WELCHKO, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Civil Action No. 3:18-cv-226 ) Judge Stephanie L. Haines |
| UPMC ALTOONA and AFSCME COUNCIL 83 LOCAL 691, | ) ) ) |
| Defendants. | ) ) |

## ORDER

AND NOW, this 29th day of September, 2021, for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that Defendant's motion for summary judgment (ECF No. 31) is GRANTED, and summary judgment is entered in favor of Defendant on all of Plaintiff's claims; and,

IT IS FURTHER ORDERED the Clerk of Court shall mark this case CLOSED as there are no claims remaining in this action.

An appropriate Judgment follows.

/s/ Stephanie L. Haines
Stephanie L. Haines
United States District Judge